UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :  No. 3:18CR90(JAM)
                                :
          v.                    :
                                :
MIGUEL CLAUDIO,                 :
                                :  New Haven, Connecticut
                Defendant       :  March 8, 2019
                                :
- - - - - - - - - - - - - - - - x
```

<u>GUILTY PLEA</u>

BEFORE:

THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.

A P P E A R A N C E S:

FOR THE GOVERNMENT:

OFFICE OF THE UNITED STATES ATTORNEY
450 Main Street
Hartford, Connecticut 06103
BY:  BRIAN P. LEAMING, AUSA

FOR THE DEFENDANT:

KESTENBAND LAW FIRM, LLC
2389 Main Street
Glastonbury, Connecticut 06033
BY:  JEFFREY C. KESTENBAND, ESQ.

Diana Huntington, RDR, CRR
Official Court Reporter

1          **10:23 A.M.**

2          THE COURT:  We're here today for what I

3    understand is a change of plea in the matter of United

4    States of America v. Miguel Claudio.

5          Appearance of counsel for government, please.

6          MR. LEAMING:  Good morning, Your Honor.  Brian

7    Leaming on behalf of the United States.

8          MR. KESTENBAND:  Good morning, Your Honor.  Jeff

9    Kestenband representing Miguel Claudio who is seated to my

10   left.

11         THE COURT:  Mr. Claudio, are you doing okay

12   today, sir?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Mr. Claudio, as I understand it, the

15   reason that we're here today is for you to consider

16   whether you wish to change your plea to a plea of guilty

17   to two counts of the indictment.  One charges you in

18   Count Three of the indictment with conspiracy to carry and

19   use a firearm during and in relation to a drug-trafficking

20   crime.  And the other one is Count Four of the indictment

21   to a lesser included offense of Count Four of the

22   indictment, that is brandishing a firearm during and in

23   relation to a drug-trafficking crime.  So that's what I

24   understand is you're here considering whether to enter a

25   plea of guilty to those two counts of the indictment; does

1  that sound right, sir?

2           THE DEFENDANT:  Yes.

3           THE COURT:  I take it, Mr. Leaming, that there

4  are possibly victims in relation to the conduct at issue

5  in this case?

6           MR. LEAMING:  Yes, Your Honor.

7           THE COURT:  If you would put that on the record.

8           MR. LEAMING:  Correct.

9           And I've spoken to one of the victims a couple

10  days ago, Your Honor.  He was advised of the proceedings

11  going forward.  Actually, at that time we thought it was

12  going to go forward on the day that it didn't go forward.

13           THE COURT:  Of course.

14           MR. LEAMING:  And I've been in contact with them

15  at various times throughout the case.  They are aware of

16  their right to be present.  And whenever a sentencing date

17  will be set, I will certainly inform them of that date.

18           THE COURT:  Now, I know that the parties have

19  reached a resolution essentially on these two counts.  And

20  I know and I saw from the draft of the plea agreement it

21  contemplates essentially that the 924(c) offense that is

22  in Count Four of the indictment would not be -- you don't

23  anticipate that that would be served consecutively.

24           MR. LEAMING:  That's correct, Your Honor.

25           THE COURT:  And I'm sure you both are very

1    experienced counsel and you've talked at length about

2    this.  I wanted to make sure that, as far as you know,

3    that the victims would not have a concern about that with

4    respect to where it is the parties have agreed to with the

5    Sentencing Guidelines range.  It looks like it could have

6    been quite a bit higher, I think, as everybody knows.

7              MR. LEAMING:  Correct, Your Honor.  In my sort

8    of general discussions with them about how the Sentencing

9    Guidelines and what a possible sentence would be, frankly,

10   they didn't really seem to be all that focused on that.

11             And speaking most recently with Victim B, I

12   would say this.  He expressed concern about the actual

13   charge, because he felt that it made him look like he was

14   a drug dealer.  And I attempted to explain to him that,

15   no, that's the conduct to which the defendant is pleading

16   guilty; it doesn't infer that you were involved in any

17   drug conspiracy.  I think it was a legal obstacle that I

18   tried to assure him that it had nothing to do with your

19   conduct; it had to do with the defendant's charged

20   conduct.

21             As far as the sort of sentence, at various times

22   both victims expressed that, wow, that seemed like a lot

23   of time to them.

24             THE COURT:  Okay.  I'm comfortable with that.

25             Mr. Claudio, I'm going to ask you and your

1    counsel to come to the lectern up here in front.

2              It looks like, Mr. Claudio, are these family

3    members who have come in?

4              THE DEFENDANT:  That's my son, my wife, my

5    mother-in-law.  And my mother and my brother.

6              THE COURT:  Welcome to them.  A very young son

7    it looks like.

8              So Mr. Claudio, I have a lot of questions for

9    you.  The first thing I'm going to do is have you put

10   under oath.

11             THE CLERK:  Please raise your right hand.

12             (Defendant sworn.)

13             THE COURT:  Sir, do you understand that, now

14   that you've been put under oath, if you were to

15   intentionally fail to tell the truth today to me, that

16   could subject you to a prosecution for perjury or for

17   false statement?

18             THE DEFENDANT:  Absolutely.

19             THE COURT:  So I need to ask you a little bit of

20   questions about your background.

21             Could you state your full name for the record,

22   please.

23             THE DEFENDANT:  My full name is Miguel Angel

24   Claudio.

25             THE COURT:  How old are you, sir?

```
1              THE DEFENDANT:  I'm 36.

2              THE COURT:  And where were you born?

3              THE DEFENDANT:  Hartford.

4              THE COURT:  And how far have you gone in school?

5              THE DEFENDANT:  Um, I stopped at tenth grade,

6  but I finished it in District 1.

7              THE COURT:  Okay.  Did you get a GED?

8              THE DEFENDANT:  I got a high school diploma.

9              THE COURT:  Good.

10             Anything beyond that?

11             THE DEFENDANT:  No, not yet.  I'm looking

12 forward to that, but not as of right now.

13             THE COURT:  Right, right.

14             So I need to ask you, you're incarcerated now;

15 is that right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  What facility are you at?

18             THE DEFENDANT:  I'm in Bridgeport.

19             THE COURT:  At the Bridgeport Correctional?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And are you being treated okay

22 there?

23             THE DEFENDANT:  Um, it's different.  It's

24 prison.

25             THE COURT:  It's prison.  All right.
```

1          But are you essentially -- I'm trying to figure

2    out, and the reason I'm asking this is to make sure you're

3    thinking clearly today and there's nothing that's stopping

4    you from thinking clearly today.

5          Are you under any kind of influence of any kind

6    of medications or any kind of drugs?

7          THE DEFENDANT:  Besides the medication I take

8    for my medical condition, no.

9          THE COURT:  I see.  Is that like a stomach

10   condition?

11         THE DEFENDANT:  No.  I have a colostomy.

12         THE COURT:  So you're taking medication for

13   that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Does that medication affect your

16   ability to think clearly?

17         THE DEFENDANT:  No.

18         THE COURT:  Any other medications?

19         THE DEFENDANT:  No.  No, I don't.  I take

20   medication to sleep, but...

21         THE COURT:  You're awake right now, it looks

22   like quite alert.

23         THE DEFENDANT:  Yes.

24         THE COURT:  Are you seeing any kind of a mental

25   health counselor or a psychiatrist?

1          THE DEFENDANT:  When I was in Wyatt, I was.  And

2     I saw her one time in Bridgeport.  And, you know, I'm

3     waiting for her to call me back.  I guess there's a lot of

4     people, so it's a little harder for her to get to me.

5     I've been trying to reach out to them and speak to her.

6          THE COURT:  I see.  Okay.

7          Do you feel like you're understanding everything

8     today?

9          THE DEFENDANT:  Yes, I'm understanding.

10          THE COURT:  Your mind is clear?

11          THE DEFENDANT:  My mind is clear.

12          THE COURT:  Mr. Kestenband, any concerns about

13     your client's competence to enter pleas of guilty if

14     that's what he chooses to do today?

15          MR. KESTENBAND:  No, Your Honor.  Neither today

16     or during our previous meetings at the jail, I had no

17     trouble speaking or communicating with Mr. Claudio.

18          THE COURT:  Sir, have you read the charges

19     against you here, the indictment including, of course,

20     these two counts of the indictment to which you might

21     plead guilty today?

22          THE DEFENDANT:  Yes.  Me and Mr. Kestenband have

23     been through it a few times.

24          THE COURT:  Okay.  We can have them read aloud

25     here or would you waive a reading of the indictment?

1          THE DEFENDANT:  Yeah, I waive it.

2          THE COURT:  Do you feel like you've had enough

3    time to talk about the case with Mr. Kestenband?

4          THE DEFENDANT:  Yes.  He's been -- we've been

5    talking a lot about it.

6          THE COURT:  It's been pending quite a while, I

7    think, right?  We were about to be set for a jury trial in

8    the case.

9          Has he answered the questions that you have to

10   your satisfaction?

11         THE DEFENDANT:  Absolutely.

12         THE COURT:  Do you have any concerns, because

13   now is the time to say it, about the quality of

14   representation you've received?

15         THE DEFENDANT:  No, not the quality of

16   representation, no.  The quality is fine.

17         THE COURT:  So I want to talk to you about what

18   you'd be giving up, essentially, if you do decide to plead

19   guilty today.

20         The first thing I emphasize is that you don't

21   have to plead guilty.  We're here in this court proceeding

22   and we started this court proceeding, but the whole

23   purpose of having this proceeding is for you to make sure

24   that this is the decision that you want to do and for me

25   to make sure that this is something that you're doing

1  knowingly and voluntarily, okay?

2            THE DEFENDANT:  Absolutely.

3            THE COURT:  So just the fact that we've come in

4  and we've started this formal proceeding and that you've

5  got your family and I'm asking you questions and all that,

6  if you at any point want to stop or if you want to take a

7  break just to talk to Mr. Kestenband some more or if you

8  change your mind altogether and say, "hey, I want to have

9  a trial," you could do that.  Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  So it's not going to be until the

12 very end of today's proceeding that I'm going to ask you,

13 are you ready to make a decision.  And that's when you'll

14 have to make your decision whether you want to plead

15 guilty or whether you want to take more time to think

16 about it or whether you want to exercise your

17 constitutional right to a trial.  Okay?

18           THE DEFENDANT:  Okay.

19           THE COURT:  Have you ever been through a trial?

20           THE DEFENDANT:  No, sir.

21           THE COURT:  So I want to talk to you about what

22 you'd be giving up in terms of your right to a trial.

23           You have a constitutional right to a public

24 speedy jury trial before a jury at which the prosecution

25 or the government would have to prove its case against you

1    beyond a reasonable doubt.  Okay?  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So what would happen would be if the

4    case went to trial, it probably would be here in this

5    courtroom.  Mr. Leaming, the prosecutor, would call

6    witnesses to come testify.  They'd sit over here in the

7    witness chair.  They would answer questions from

8    Mr. Leaming.  And then Mr. Kestenband would have an

9    opportunity to cross-examine or challenge those witnesses,

10   bring out information that might be helpful to you.

11             He would also have an opportunity to call any

12   kind of witnesses who might be helpful to you.  And he

13   could also introduce evidence that might be helpful to

14   you, it might be documents, photos or video, anything like

15   that.  And if he were having trouble getting those

16   witnesses to come to court or that evidence to be produced

17   here in court, he could ask me, as the judge, for a court

18   order to require that evidence and those witnesses to

19   appear in court.  Do you understand that, sir?

20             THE DEFENDANT:  Yes.

21             THE COURT:  So basically what I'm telling you is

22   at the trial it's the government that has to prove your

23   guilt beyond a reasonable doubt, but you do have the right

24   to present a defense in the case.  Do you understand that?

25             THE DEFENDANT:  Yes.

1           THE COURT:  And you are presumed innocent at

2    trial.  That's what we mean when we say it's the

3    government that has to bear the burden of proof.  Do you

4    understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Now, I think I neglected to mention

7    this but I should, it should be obvious to you as well,

8    that throughout the trial you have the right to counsel

9    and whether it's appointed counsel or whether you would

10   retain your own counsel throughout the trial and all

11   related proceedings.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  So one of your other trial

14   rights is you have the right, if you wish to, to testify

15   on your own behalf.  On the other hand, if you decided you

16   didn't want to testify, you actually have a constitutional

17   right not to testify because it might possibly tend to

18   incriminate you.  Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  So you could testify if you wanted

21   to or you could decide you're not going to testify.  If

22   you decided you didn't want to testify, I would tell the

23   jury they could not hold that against you in any way.

24   It's the government that has to prove its case against you

25   beyond a reasonable doubt.  Okay?

1              THE DEFENDANT:  Okay.

2              THE COURT:  So basically that's what would

3    happen at a trial.

4              And if you do decide to plead guilty at the end

5    of today's proceeding today, there wouldn't be any kind of

6    a trial.  Probably the next time that you'd be back here

7    in court would be for purposes of a sentencing hearing,

8    okay?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, there are certain what the law

11   calls collateral consequences, things like you lose the

12   right to vote from a guilty plea or the right to hold

13   public office or serve on a jury.  You'd certainly lose

14   the right to possess any kind of firearm or ammunition.

15   And you'd also have a DNA sample taken from you.  And I

16   know you've told me you were born in Hartford so you're a

17   United States citizen, but I do have to say this for the

18   record, if for any reason that were mistaken and you were

19   not a United States citizen, you could be deported or

20   removed from the country.  Okay?

21             THE DEFENDANT:  Okay.

22             THE COURT:  So that's what you're giving up if

23   you do decide to plead guilty today in terms of what I've

24   just described.

25             Is there anyone that's threatening you or

1    forcing you to enter a plea of guilty?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  If you do go ahead and do this,

4    would it be something you're doing of your own free will?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  So I take it that there's a written

7    plea agreement.  I have a draft of one right here.

8              Have you read that plea agreement, sir?

9              THE DEFENDANT:  Me and Mr. Kestenband, my

10   attorney, has been going through it more than once.

11             THE COURT:  More than once.

12             Have you gone through every page?

13             THE DEFENDANT:  We have.

14             THE COURT:  Every word of it, sir?

15             THE DEFENDANT:  He's broken down all of it to

16   me.

17             THE COURT:  Do you have any questions at all

18   about the plea agreement?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Now is the time to ask any questions

21   that you might have.

22             THE DEFENDANT:  No, sir.

23             THE COURT:  Okay.

24             What I'm going to do, and this is what we do in

25   all these cases, is I'm going to ask Mr. Leaming to

 1     summarize, basically going page by page, the plea

 2     agreement.  I'm going to have you sit down because it will

 3     take him a few minutes to do that.  And then I'm going to

 4     ask you at the end of his summary if there's anything

 5     unclear to you or anything you have a question about.

 6     Okay?

 7              THE DEFENDANT:  Okay.

 8              THE COURT:  Go ahead.

 9              THE DEFENDANT:  Thank you.

10              THE COURT:  Thank you.

11          Mr. Leaming.

12              MR. LEAMING:  Thank you, Your Honor.

13              The agreement is in the form of a letter.  It's

14     been updated to reflect today's date, March 8, 2019.  It

15     consists of nine pages.

16              Page 1 sets forth the offenses to which

17     Mr. Claudio intends to plead guilty, and has already been

18     explained by the Court, that's Count Three of the

19     indictment and the lesser included offense of Count Four.

20              On the bottom of Page 1 continuing on to Page 2

21     sets forth the essential elements that the government

22     would be required to prove.

23              THE COURT:  I guess I'd just ask you to go

24     through those.  I want to make sure that they're

25     understood.

1           MR. LEAMING:  Certainly.

2           As to Count Three, the government would be

3    required to prove, first, that two or more persons agreed

4    to do one of the following:

5           (1) to use or carry a firearm during and in

6    relation to a drug-trafficking crime which may be

7    prosecuted in federal court or to possess a firearm in

8    furtherance of a drug-trafficking crime which may be

9    prosecuted in federal court, to wit, conspiracy to possess

10   with intent to distribute controlled substances in

11   violation of Title 21 U.S.C. Section 846;

12          (2) the defendant knew of this agreement or

13   conspiracy; and

14          (3) the defendant knowingly and voluntarily

15   participated in or became a part of this agreement or

16   conspiracy.

17          THE COURT:  Okay.  So essentially the government

18   would have to show that he knew about the conspiracy and

19   he intentionally joined in the conspiracy knowing it was

20   wrong.

21          MR. LEAMING:  Correct.

22          THE COURT:  Mr. Claudio, do you understand that,

23   those elements?

24          THE DEFENDANT:  Yes, I do understand.

25          THE COURT:  And then there's a second charge as

1    well for Count Four?

2              MR. LEAMING:  Yes, Your Honor.  It's the lesser

3    included of Count Four.  Again, the government would be

4    required to prove three essential elements:

5              (1) the defendant committed the drug-trafficking

6    crime charged in Count One of the indictment;

7              (2) the defendant knowingly brandished a

8    firearm; and

9              (3) that the use, carrying, and brandishing of

10   the firearm was during and in relationship to the

11   defendant's drug-trafficking crime.

12             THE COURT:  And you said it's a lesser included.

13   Maybe you could put on the record, what's that mean?

14             MR. LEAMING:  Certainly, Your Honor.

15             In the indictment Mr. Claudio is charged with

16   the actual discharging of the firearm which if he had been

17   convicted of that offense would mandate a minimum term of

18   imprisonment of ten years to a maximum of life.  The

19   lesser included charges him -- or to which he intends to

20   plead guilty that he brandished the firearm which would

21   mandate a term of seven years.  It would still carry a

22   maximum of life, but the mandatory term of imprisonment

23   would be less.

24             THE COURT:  Thank you.

25             Mr. Claudio, do you understand the elements of

1    the second count, Count Four?

2              THE DEFENDANT:  Yes, I understand.

3              THE COURT:  All right.

4              Please proceed.

5              MR. LEAMING:  On Page 2 also sets forth the

6    various penalties that would apply to these offenses.  As

7    I've described, Count Four, the lesser included, carries a

8    mandatory of seven years with a maximum of life.  Count

9    Three carries a maximum penalty of 20 years.

10             As to each of those offenses, the defendant is

11   exposed to a maximum term of supervised release of up to

12   five years.

13             Also sets forth that for each offense the

14   maximum fine would be $250,000.

15             In addition, there's a mandatory special

16   assessment of $100 per count.

17             Page 3 sets forth the defendant's understanding

18   as to the various factors the Court must consider in

19   imposing sentence, including the Sentencing Guidelines.

20             THE COURT:  Before you get to that, I just want

21   to make sure you understand, Mr. Claudio, basically you

22   just heard what the maximum penalty would be.  It could be

23   up to life in prison, you realize that?  I'm not saying

24   that that's what the Court would impose, but that's the

25   maximum allowed under the law.  Do you understand that,

1    sir?

2                   THE DEFENDANT:  I understand.

3                   THE COURT:  And you understand the minimum, at

4    the very least that the Court would have to impose, would

5    be a term of seven years of imprisonment.  Do you

6    understand that?

7                   THE DEFENDANT:  Yes, sir.

8                   THE COURT:  Okay.  All right.

9                   Please proceed.

10                  MR. LEAMING:  Thank you, Your Honor.

11                  In addition, the defendant understands that if

12   the Court calculates a different guidelines application

13   than what he expects, he would not be entitled to withdraw

14   his guilty plea.

15                  Page 3 also sets forth an important promise by

16   the government that it intends to recommend to the Court a

17   three-level reduction for acceptance of responsibility.

18   That recommendation is conditioned on certain things

19   described on the bottom of Page 3 and continuing onto

20   Page 4.  In addition, if certain events were to happen,

21   the government reserves its right to withdraw its

22   recommendation.  For example, if the defendant does not

23   terminate or withdraw from criminal conduct or

24   associations, engages in conduct which would provide an

25   adjustment for obstructing or impeding the administration

1  of justice, or if he were to be released violating any

2  condition of release, the government reserves its right if

3  those were to occur to withdraw its recommendation.

4          In addition, if he does enter a guilty plea

5  today and at some point later intends to withdraw his

6  guilty plea, again, the government reserves its right to

7  withdraw that recommendation.

8          The defendant does acknowledge and understand

9  that the Court, however, is not bound by the government's

10  recommendation for his acceptance and would not be

11  entitled to withdraw his guilty plea if the Court did not

12  award it.

13          On Page 4 and continuing all the way to the

14  bottom and onto the top of Page 5 sets forth the parties'

15  agreement as to how they think the Sentencing Guidelines

16  apply to this case and what the calculation would be.

17  That's described also continuing onto Page 5 with respect

18  to Count Three and Count Four.

19          With respect to Count Three, the government

20  believes the applicable Sentencing Guidelines range is 77

21  to 96 months and a fine range of $15,000 to $150,000.

22          With respect to Count Four, however, which

23  carries the mandatory seven years, that is in affect the

24  Sentencing Guidelines range.

25          And under a grouping analysis, the parties agree

1   that the resulting guidelines range is 84 to 96 months of

2   imprisonment.  Again, it is the parties' intent and

3   agreement that the applicable Sentencing Guidelines range

4   is that notwithstanding any statutory obligation on the

5   Court to impose a consecutive sentence.

6           THE COURT:  So basically at sentencing the

7   parties anticipate recommending that the Court impose a

8   sentence somewhere between, well, 84 to 96 months of

9   imprisonment, somewhere between seven to eight years of

10   imprisonment; does that sound right?

11           MR. LEAMING:  Well, I think how I view this,

12   Your Honor, is that the government and the defendant agree

13   that the applicable sentencing range, based upon their

14   calculations of the guidelines, is 84 to 96 months.

15   Obviously, the Court on the low end is bound by the 84

16   months.

17           THE COURT:  But is that what the parties

18   anticipate?  I just want to make sure that Mr. Claudio

19   understands or can expect, is that essentially what the

20   parties anticipate will be their position at sentencing?

21           MR. LEAMING:  I can't say that that will be the

22   government's position.  The agreement does not bind the

23   government to that range.  Typically, I wouldn't bind

24   myself to a range as far as what I recommend until I see

25   the Presentence Report.

1          THE COURT:  I see.

2          MR. LEAMING:  In other words, it would depend on

3    other factors, but the reason that that language is in

4    there, and Court may recall there's similar language in

5    co-defendant Mr. Armaral's guilty plea, is that -- I'm not

6    100 percent certain, but the Court may have to impose 84

7    months consecutive to any other sentence it would impose.

8          So if the underlying sentence for Count Three is

9    in fact 77 to 96, understanding that the Court must

10   finally calculate that, but let's assume that the Court

11   would agree, the parties did not believe that the

12   appropriate guidelines sentence would be 84 plus 77.

13   Legally that may be how it may -- in other words, the

14   Court could obviously vary, but when you read

15   Section 924(c) of Title 18, one interpretation would be

16   that that sentence has to run consecutive to any other

17   sentence imposed.

18         There was also other discussions going on.

19   Mr. Claudio had state charges.  In fact, he had pled

20   guilty to a state firearm charge.  And so there was

21   discussions that if there was a sentence imposed in

22   connection with that, would the Court have to impose the

23   84 months consecutive to that sentence.

24         So it is the parties' intention in this plea

25   agreement that the applicable Sentencing Guidelines range

1     is as we set forth in the agreement, but it doesn't

2     necessarily bind the parties to say that's the sentence

3     the Court should impose.

4              THE COURT:  I see.

5              Does the government anticipate that it's going

6     to be seeking a sentence of more than eight years at the

7     sentencing?

8              MR. LEAMING:  It could be.  As I indicated,

9     Your Honor, I'd like to look at the Presentence Report

10    before I formulate what I think, in the government's view,

11    is the appropriate sentencing range or appropriate

12    sentence.

13             THE COURT:  So it could be, does this allow --

14    the plea agreement allows the government, if it wishes, to

15    seek an upward departure?

16             MR. LEAMING:  Or a variance, yes.

17             THE COURT:  All right.

18             Mr. Kestenband.

19             MR. KESTENBAND:  I guess two thoughts,

20    Your Honor.

21             One, in relation to the state case, it was

22    always our understanding that if a sentence was imposed in

23    state court and that this Court then sentenced Mr. Claudio

24    after imposition of a state sentence, that that sentence

25    would have to be consecutive to the state sentence.

1          Part of the discussions that have occurred with

2     the lawyer who is representing Mr. Claudio in state court,

3     there have been discussions, it's my understanding from

4     speaking with her, that once Mr. Claudio pleads guilty

5     here, the judge in state court has agreed to vacate the

6     plea at which time the State would nolle the state charges

7     because the conduct arises out of the same set of

8     circumstances that Mr. Claudio was pleading to here.  So

9     we don't expect there to be a sentence in state court, and

10    so there wouldn't be anything to impose consecutive to.

11         One question that this has raised is -- and

12    I'm -- it was never my understanding that there would be a

13    consecutive sentence on -- in other words, if the count

14    that carries the mandatory 84 months, that's Count Four,

15    if the Court imposes a sentence on Count Three, you know,

16    and assuming the guidelines are somewhere in the number of

17    years, it was never my understanding that the 84 months or

18    higher would be consecutive to another sentence on

19    Count Three.  My expectation was that there would be one

20    sentence in this Court and that's how we viewed the

21    applicable guidelines range as being approximately seven

22    to eight years.

23         THE COURT:  Ordinarily the Court has to impose a

24    sentence for each count of conviction.  It can run those

25    sentences that it imposes wholly concurrently.

1           MR. KESTENBAND:  Right.  I just want to make

2     clear, because there's a certain rule that the 924(c)

3     sentence has to be consecutive to any other sentence

4     that's already been imposed.  But I didn't view that as

5     applying to the sentence here on Count Three.  Only if it

6     was a sentence imposed in state court first that

7     Your Honor would then have to impose the 924(c) sentence

8     consecutively to that sentence.

9           THE COURT:  I see.

10          So there's a little bit of uncertainty about

11    that legal issue, it sounds like, in the parties' mind.

12          MR. LEAMING:  I would agree.

13          And to sort of dial it back going back to

14    Mr. Armaral's guilty plea, counsel there sort of raised it

15    in the courtroom with the government's counsel, I don't

16    know if the Court recalls that.  Intuitively, I always

17    thought that, you know, how could you run the 924(c)

18    consecutive to the conspiracy which is sort of part of the

19    924(c).  It just sort of seemed not to really be the

20    intent of the legislature.  But I may be totally wrong

21    because if you look at the statute and read it literally,

22    it says consecutive to any other sentence.  I always

23    viewed, for example, if you had a felon in possession

24    charge and the 924(c) arose out of that, do you

25    really want to -- is it really the intent to run that

1  consecutive to sort of the same conduct?  I always viewed

2  it in the context of if there was conviction for the drug

3  offense, then it would seem that you have to run the

4  924(c) consecutive to the drug offense if there was a

5  guilty plea to that.

6         So with Mr. Armaral, we agreed and put on the

7  record that the parties' intention was that the range that

8  was set forth in the plea agreement is the range that the

9  parties believe to be applied.

10         So after that, these discussions with Attorney

11  Kestenband had sort of been ongoing and these numbers had

12  sort of been going back and forth, so I added that

13  language in here and alerted Attorney Kestenband just to

14  make sure that that was what the parties view it as.

15  Because the alternative would be a substantially higher

16  guidelines range, a lot higher.  And that wasn't sort of

17  the parties' intent in their negotiations.  Understanding

18  that it wasn't binding anybody to say that's the range

19  that the Court should impose either by the government or

20  the defendant, but that, you know, from a defendant's

21  perspective when they see those high numbers even

22  understanding they could argue down to the seven years,

23  you know, it's often an obstacle to try to resolve the

24  case and it would seem disproportionate maybe to sort of

25  how the other defendants are playing in.

1          With respect to why there's two counts, because

2    the way the 924(c), if he only pled guilty to 924(c),

3    that's the only -- that range is the mandatory minimum.   I

4    also had concerns about how that impacted the potential

5    for sort of advocating for the victims' rights, what

6    happened to them factor into the guidelines range.

7    Because under 924(c) it doesn't matter.   It doesn't matter

8    if there was injuries or victims or whatever, it just

9    matters that that's the mandatory sentence.

10          So I know this sort of does raise legal issues

11   which will probably be hashed out at sentencing, but I

12   think --

13          THE COURT:   Regardless, it sounds to me, for

14   today's purposes, what Mr. Claudio should know is at a

15   future sentencing hearing both sides are going to get up

16   and say, Judge, the applicable guidelines range here is 84

17   to 96 months of imprisonment, right?

18          MR. LEAMING:   Correct.

19          THE COURT:   And the government reserves its

20   right to seek an upward departure.   I'm not sure exactly

21   what the basis would be that's not inconsistent with its

22   agreement about how the guidelines should apply here, but

23   the government's at least reserving that right that

24   Mr. Claudio should know, and the government's not

25   committing that it's going to do that but it's a

1   possibility Mr. Claudio should know.  And Mr. Kestenband,

2   of course, is fully entitled to argue for as lenient a

3   sentence as possible knowing that it can't be any lower

4   than seven years under any circumstances.  Does that sound

5   right?

6             MR. LEAMING:  Yes, Your Honor.

7             MR. KESTENBAND:  It generally sounds right,

8   Your Honor.  I guess I just want to be clear about my

9   concern that -- and maybe the last sentence that the Court

10  said is the key and alleviates my concern that the

11  sentence can't be any less than 84 months.  I just want to

12  be clear that our position is that the minimum is no more

13  than 84 months.  Meaning that if, for example, the

14  sentence on Counts Three and Four have to be imposed

15  consecutively to each other, then in theory the minimum

16  would be 84 months plus one day.  If theoretically the

17  Court imposed a sentence of one day on Count Three and 84

18  months consecutive, it's always been our understanding

19  that the sentence on Count Four did not have to be imposed

20  consecutively to the sentence on Count Three.

21             I understand that the government has the right

22  to argue for an upward departure, that's a discretionary

23  decision by the government, and the Court is either free

24  to agree or disagree with the government.  But if, as a

25  matter of law, the two sentences have to be imposed

 1  consecutively, then that raises the mandatory minimum,

 2  which is outside the scope of our agreement.  And so --

 3          THE COURT:  Why does that do that?  Is the count

 4  on Count Three, is the Court required to impose a term of

 5  imprisonment?

 6          MR. KESTENBAND:  No.

 7          THE COURT:  Why does it raise the mandatory

 8  minimum?

 9          MR. KESTENBAND:  I guess that's true.  If the

10  Court is not required to impose a period of imprisonment

11  on that count, then it wouldn't raise the mandatory

12  minimum.

13          To be fair to Mr. Claudio, my discussions with

14  him have focused on the mandatory minimum and we haven't

15  really talked about, you know, the possibility that there

16  could be a substantially larger sentence imposed based on

17  the theoretical possibility that the sentences have to be

18  imposed consecutively on Counts Three and Four.

19          THE COURT:  I think as a practical matter,

20  though, if for some reason the Court of Appeals or some

21  source of law says it must be consecutive, Counts Three

22  and Four must be consecutive, it strikes me that there

23  would be a powerful argument here that the Court should

24  honor the parties' plea agreement which essentially

25  contemplates and says we think the Sentencing Guidelines

1    here are 84 to 96 months, and absent the government's

2    option to seek an upward departure, but presumably that's

3    for reasons that don't have to do with undermining the

4    parties' plea agreement, which was not to run them

5    consecutive, as I see it.  Maybe the government learns

6    something remarkably adverse and that's extraordinary

7    during the presentence investigation, and then the

8    government can take that and say that's grounds for an

9    upward departure.  But as I understand it, you're not

10   going to be here -- we're not going to really need to hash

11   out the particulars of this uncertain legal issue, I

12   think, in light of what the parties are representing here

13   in terms of what their positions are going to be.  I just

14   think that should be clear.  Otherwise we should figure

15   out what the answer to the legal issue is.

16          And this is in large part why I started off this

17   proceeding saying, well, have we had a conversation with

18   the victims to make sure that the victims aren't saying,

19   well, no, there should be a 20-year sentence here, there

20   should be an immensely longer sentence than the Sentencing

21   Guidelines range that the parties have stipulated to here.

22          So I'm not sure if there's anything else to put

23   on the record.

24          Mr. Claudio, do you have any questions about

25   this, what you've heard?

1               (Pause.)

2               MR. KESTENBAND:  He has no questions,

3    Your Honor.

4               THE COURT:  Anything else to put on the record

5    about this?

6               MR. LEAMING:  No, Your Honor.

7               MR. KESTENBAND:  Just on a related issue on the

8    guidelines range and Mr. Claudio's criminal history, we

9    agree that he's Category VI.  Certain discussions that

10   Mr. Leaming and I have had concern a potential argument we

11   may be making that at sentencing, by the time of

12   sentencing that he's actually Category V.  And the plea

13   agreement does allow the parties to recalculate the

14   criminal history category if things change.

15              THE COURT:  I understand that.

16              MR. KESTENBAND:  Thank you.

17              THE COURT:  Okay.  Mr. Leaming, maybe pick it up

18   on Page 5 at the waivers.

19              MR. LEAMING:  Yes, Your Honor.

20              Page 5 and continuing onto Page 6 contain two

21   waivers.  First, the defendant is waiving his right to

22   challenge his conviction based upon his plea of guilty.

23   And in addition, at the top of Page 6, he has a limited

24   waiver of his right to appeal or collaterally attack his

25   sentence provided the sentence does not exceed 96 months

1    of imprisonment, a five-year term of supervised release,

2    the $200 special assessment, and a $150,000 fine, the

3    defendant is waiving or giving up his right to either file

4    a direct appeal or to collaterally attack through a habeas

5    petition any sentence provided that it does not exceed

6    those thresholds.

7              There's also the provision if, however, at

8    sentencing the Court determined the defendant's

9    calculation of his criminal history is incorrect and he

10   qualifies for Criminal History Category V, the parties

11   agree to limit that appellate waiver to 87 months of

12   imprisonment.  Again, that would be something the Court

13   would determine at the time of sentencing and the

14   defendant acknowledges he's waiving these rights knowingly

15   and voluntarily.

16             THE COURT:  Do you understand that, Mr. Claudio?

17   You're basically giving up your rights to file an appeal

18   or some other kind of habeas corpus legal challenge to the

19   conviction and also to the sentence if it doesn't exceed

20   those amounts that are specified at the top of Page 6 of

21   the agreement; do you understand that, sir?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Okay.

24             MR. LEAMING:  Continuing on to Page 6, it sets

25   forth at the bottom various trial rights which the

1    defendant will be giving up if he decides to plead guilty

2    today which the Court has already reviewed.

3          On Page 7 there's an additional right that he

4    would be giving up.  This is a waiver of a statute of

5    limitations defense.  This would only apply if, for some

6    reason in the future, his conviction is vacated or set

7    aside the defendant would waive any potential statute of

8    limitations defense he would have at that time.

9          Page 7 sets forth that the defendant is entering

10   into the agreement freely and voluntarily because he is

11   guilty.  There are no other promises other than what's set

12   forth in the plea agreement letter, and no one has

13   threatened, forced, intimidated, or coerced him into

14   pleading guilty or entering into the agreement.

15         Bottom of Page 7, the defendant acknowledges

16   that the agreement is limited to the undersigned parties

17   and does not bind any other federal, state, or local

18   authority.

19         Page 8 sets forth collateral consequence which

20   the Court has already reviewed with Mr. Claudio.

21         Also on Page 8 is another important promise by

22   the government that this will satisfy his federal criminal

23   liability for the events described in the indictment, and

24   after sentencing the government will move to dismiss the

25   remaining counts as to Mr. Claudio.

1           The defendant acknowledges, however, that if he

2    violates any term or condition of the agreement, engages

3    in any further criminal activity, or fails to appear for

4    sentencing if he were to be released, the government may

5    void all or part of the agreement and the defendant may

6    not withdraw his guilty plea.

7           Finally, these are the only promises,

8    agreements, or conditions that the parties have entered

9    into which are set forth in the agreement, and none will

10   be entered into unless set forth in writing and signed by

11   all parties.

12          THE COURT:  Mr. Claudio, do you have any

13   questions at all about this plea agreement?

14          THE DEFENDANT:  No.

15          THE COURT:  Do you understand that, apart from

16   what's in this plea agreement, you have no promises or

17   side deals with the government in the case?

18          THE DEFENDANT:  Yes, I understand.

19          THE COURT:  Okay.  All right.

20          So if the parties are agreeable with the plea

21   agreement, go ahead and sign it, if you can.

22               (Pause.)

23          THE DEFENDANT:  There you go.

24          THE COURT:  Then I'll ask you to come on back up

25   to the lectern, please, with Mr. Kestenband.

1          And if it's been signed by Mr. Leaming, if you

2     could hand it up to the Clerk of Court for filing.

3          I see the plea agreement appears to be in order,

4     it's signed by all counsel and by Mr. Claudio.  It's

5     accepted for filing.

6          So Mr. Claudio, you've heard already about

7     essentially what the possible sentences could be in this

8     case in terms of what the very minimum is, what the very

9     maximum would be possible.  We've talked a lot about the

10    Sentencing Guidelines here as well.  I want to talk to you

11    a little bit more about what it is as the sentencing judge

12    I would be required to consider, because today you won't

13    know exactly what sentence would be imposed except you

14    know it's going to be at least seven years of

15    imprisonment.

16         But what happens next if you do end up pleading

17    guilty today at the end of today's proceeding, in a few

18    weeks' time you would get together with a probation

19    officer who will do a very detailed interview of you.  And

20    this will probably be unlike anything you've seen in the

21    state court system.  The probation officer then will write

22    a very detailed Presentence Report, it's basically like a

23    mini biography, talks about your growing up, your family,

24    your schooling, everything like that.  It talks about what

25    happened in this case as well, of course.  It will talk

1    about the prior times you've been -- it sounds like you've

2    had lots of experience in the criminal justice system if

3    you're a level VI criminal history.  It talks about those

4    prior convictions that you've had.  You'll have that

5    interview.

6           The report will come out.  You'll get a copy of

7    it, a draft of it from Mr. Kestenband.  You'll want to

8    make sure to read it very carefully because there might be

9    a mistake or some kind of error in there or something that

10   you think should be in there that you want to make sure

11   that I know, right?  And you'll tell Mr. Kestenband there,

12   who is very, very experienced with working with the

13   Probation Office in this manner.

14          And then after I get a final Presentence Report

15   after you've had an opportunity to comment on it,

16   Mr. Kestenband will have an opportunity to write what's

17   called a sentencing memo, basically an argument on your

18   behalf.  Mr. Leaming, of course, will have that

19   opportunity on behalf of the government.

20          And then we get together for a sentencing

21   hearing right back in this courtroom, probably.

22          And at that sentencing hearing I'm required,

23   when deciding appropriate sentence to impose, I have to

24   think about what are the purposes of sentence under a

25   particular statute that Congress has passed here.  It

1    tells me I have to look at what's a sentence that promotes

2    respect for the law, that reflects the seriousness of the

3    offense, that reflects just punishment.  I have to think

4    about discouraging or deterring you or others to get

5    involved in this activity.  And of course I have to think

6    about rehabilitation, in other words, giving you the

7    support that you need or may need to turn things around so

8    that you're never in this kind of position again.

9            I have to make sure to avoid unwarranted

10   differences in the kind of sentence you would receive and

11   somebody in similar circumstances as you.

12           So those are the purposes I have to be thinking

13   about.  I do that in light of what I've learned from the

14   Presentence Report.  I give very serious consideration to

15   the Sentencing Guidelines, what they recommend, of course,

16   and also to your plea agreement in terms of the way that

17   the Sentencing Guidelines should apply in the case.  But

18   you should know, and I know you've been told this, if I

19   were to impose a sentence that's different than what the

20   Sentencing Guidelines say or what you think you agreed to

21   with the government, as long as it's not above the maximum

22   that the statute allows me to do, you wouldn't be able to

23   withdraw your plea of guilty and have a trial in the case.

24   Do you understand all that?

25           THE DEFENDANT:  Yes.

 1            THE COURT:  So that's pretty much the sentencing
 2    process.
 3            Do you have any questions at all about any of
 4    that, sir?  Any questions in terms of what would happen
 5    next if you do plead guilty today?
 6            THE DEFENDANT:  No.
 7            THE COURT:  Okay.
 8            So I want to talk right now about what's called
 9    the -- you've heard what the elements are for both
10    Count Three and Count Four of the charge in this case.
11    Mr. Leaming is going to describe right now how the
12    government would prove that, basically what kind of
13    evidence it would introduce.  Listen carefully, because
14    after he's done I'm going to ask you if you agree, do you
15    agree really that you are guilty of these two offenses,
16    okay?
17            Mr. Leaming.
18            MR. LEAMING:  Yes, Your Honor, thank you.
19            If the case were to proceed to trial, the
20    government would offer testimony from various law
21    enforcement and civilian witnesses as well as cooperating
22    witnesses and evidence obtained through physical and
23    electronic surveillance to include City of Hartford
24    surveillance cameras that on April 28, 2017, multiple City
25    of Hartford surveillance cameras captured a shooting that

1    occurred at the intersection of Franklin Avenue and

2    Barker Street.  The evidence would reveal that

3    co-defendant Wilson Velez, also known as Wiso, then a

4    known leader for the Latin Kings street gang had received

5    information about a person selling drugs in that area.

6    Velez met with other Latin Kings members to include

7    Mr. Claudio before all five men traveled to the location

8    in Velez's car.

9         When they arrived at the intersection of

10   Franklin Avenue and Barker Street, all five men exited the

11   vehicle and approached Victim A.  Victim A would testify

12   that he was selling drugs at that location and was

13   confronted by multiple individuals who identified

14   themselves as Latin Kings and told him that he should not

15   be at that location selling drugs.  Specifically, the

16   victim would testify that the person who we believe from

17   the video is Mr. Velez told him not to sell drugs in that

18   area without authorization from the Latin Kings.

19        Eventually, Mr. Velez, Mr. Claudio, and the

20   other members in that group surrounded Victim A.  There is

21   some factual dispute as to whether Victim A had a gun.

22   Some of the Latin Kings did search Victim A.  There's no

23   dispute, however, after they had searched Victim A that at

24   least two of the Latin Kings had guns, that is Mr. Armaral

25   and Mr. Claudio.

1          After Victim A was surrounded, co-defendant

2    Angel Cabrera struck Victim A with what appeared to be a

3    closed fist.  Victim A attempted to run, was pursued by

4    the group including Mr. Claudio.  As they chased Victim A

5    gunfire erupted.

6          After the initial gunshots, Mr. Claudio and

7    Mr. Velez took cover as did Victim B.  Mr. Claudio from a

8    position of cover against a convenience store on the

9    opposite side of where Victim B was is seen firing his gun

10   towards Victim B eventually striking him in the leg with a

11   gunshot.  Mr. Claudio was also shot during the gun

12   exchange.  He later runs when police arrive and is

13   apprehended a short distance away in close proximity to

14   the firearm.

15         Based upon the foregoing, the government could

16   prove the defendant and Mr. Velez and others had entered

17   into an agreement to possess, carry, or use a firearm

18   during and in furtherance of a drug-trafficking crime, and

19   that the defendant in fact did brandish a firearm in

20   furtherance of that drug conspiracy.

21         THE COURT:  Thank you.

22         Do you understand that, sir?  Do you agree with

23   the evidence you just heard?

24         MR. KESTENBAND:  Your Honor, can I address --

25         THE COURT:  Certainly.  Of course.

1          MR. KESTENBAND:  And there's no dispute as to

2     the elements here.

3          The government's rendition I think left open the

4     possibility that it was Mr. Claudio who brought a gun with

5     him to the scene.  And I think the evidence both through

6     Mr. Armaral's sworn written statement as well as the video

7     evidence established that Mr. Armaral brought a gun to the

8     scene and that Mr. Claudio searched one of the people in

9     the other party, removed a gun, tucked it behind his

10    waistband, and later displayed that firearm.  So we just

11    wanted to be clear that the evidence both from

12    Mr. Armaral's statement as well as the video evidence

13    would show that Mr. Armaral brought a gun to the scene,

14    and that the second gun was procured at the scene from

15    somebody else who was there by Mr. Claudio.

16         THE COURT:  So Mr. Claudio it's clear though

17    that he did at least possess a gun at the scene and at the

18    least he brandished it?

19         MR. KESTENBAND:  Yes.

20         THE COURT:  There may be a dispute about whether

21    he fired it?

22         MR. KESTENBAND:  No, I think he would

23    acknowledge that he fired it as well.  The distinction was

24    whether he brought a gun with him to the scene or whether

25    he procured it at the scene from one of the people in the

1    other party.

2            THE COURT:  And does he agree that it was for

3    the purposes of furthering a drug-trafficking conspiracy?

4            MR. KESTENBAND:  He does, Your Honor.

5            THE COURT:  That's why he was engaged with using

6    the gun that day?

7            MR. KESTENBAND:  Yes.

8            THE COURT:  Is that right, Mr. Claudio?

9            THE DEFENDANT:  Yes.

10           MR. KESTENBAND:  And I guess I should just add,

11   although he acknowledges discharging, although he's not

12   charged with that, it was in response to one of the people

13   in the other party firing first.

14           THE DEFENDANT:  Yes.

15           THE COURT:  I understand.

16           Would either party have me query further on

17   factual basis?

18           MR. LEAMING:  I would just firm up that

19   obviously Mr. Claudio knowingly and voluntarily joined the

20   conspiracy.  I understand that there's this factual

21   dispute.  The reason there's a factual dispute is that the

22   victim insists that he didn't have a gun, but there is

23   evidence that contradicts that which, as explained by

24   Mr. Kestenband, it appears that Mr. Claudio took the gun

25   off the victim.  But obviously his actions in doing so

1    were knowingly and voluntary.

2              THE COURT:  Is that right, Mr. Claudio, you

3    knowingly and voluntary took the gun to use that day?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And do you agree that you were doing

6    it basically as a part of an agreement with another person

7    to have the gun, is that right, as what's required?

8              MR. KESTENBAND:  I think, Your Honor, there was

9    certainly an implicit agreement among the group.

10             THE COURT:  Among two or more people --

11             MR. KESTENBAND:  Right, yes.

12             THE COURT:  -- to possess the gun, use and carry

13   the firearm that day; is that right?

14             MR. KESTENBAND:  There was -- can I have one

15   moment?

16             THE COURT:  Yes, of course.

17                  (Pause.)

18             MR. KESTENBAND:  No question, Your Honor, there

19   was an implicit agreement.  I don't know that there would

20   be any evidence that there was some explicit discussion to

21   grab the gun.

22             THE COURT:  Yes, I understand.  They didn't

23   write a contract saying let's have a gun.

24             MR. KESTENBAND:  But the context and the video

25   would certainly establish an implicit agreement.

 1           THE COURT:  Anything else anybody wants to put

 2   on the record?

 3           MR. LEAMING:  No, Your Honor.

 4           THE COURT:  Mr. Claudio, now it's the time.

 5   I've gone through all the questions I have.  So it's time

 6   for you to make a decision.  You could decide that you

 7   want more time to think about it, talk to your counsel.

 8   You could decide that you would like to exercise your

 9   right to a trial and we would schedule a trial date soon

10   to do that.  Or you could decide you wish to go ahead and

11   really enter a plea of guilty to these two counts of the

12   indictment, Count Three and the lesser included count of

13   Count Four.  What would you like to do, sir?

14           THE DEFENDANT:  I would like to enter a plea of

15   guilty.  It's time for me to, you know, get this on the

16   road and get my life together after it.  You know, I

17   really want to get my surgery done.  So, yeah, I'm ready.

18           THE COURT:  You're ready to plead guilty to both

19   counts here?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Please put Mr. Claudio to plea.

22           THE CLERK:  In the case of United States of

23   America v. Miguel Claudio, Criminal No. 3:18CR90(JAM), as

24   to Count Three of the indictment charging with you a

25   violation of Title 18 U.S.C. Section 924(c) and 924(o),

1    what is your plea?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  As to Count Four of the indictment

4    charging you with a violation of Title 18, as to the

5    lesser included offense contained in Count Four of the

6    indictment charging with you a violation of Title 18

7    U.S.C. Section 924(c)(1)(A)(i), (ii), and (iii) and

8    Title 18 U.S.C. Section 2(a), what is your plea?

9              THE DEFENDANT:  Guilty.

10             THE CLERK:  Your Honor, the defendant pleads

11   guilty to Count Three and Four of the indictment.

12             THE COURT:  Okay.  So on the basis of

13   Mr. Claudio's answers today under oath and the

14   representations of counsel, I am going to make the

15   following detailed findings.

16             First, I do find that Mr. Claudio is competent

17   to enter a plea of guilty.  And I find that he knows of

18   his right to plead not guilty and to a trial and the

19   related rights that I described at length to him.

20             I also find that he knows and understands the

21   elements and the nature of both of these charges to which

22   he's entered a plea of guilty.

23             I find that he knows the maximum possible

24   sentence in terms of imprisonment, supervised release, a

25   criminal fine, and payment of special assessment.

1          I also find that he knows the minimum that the

2    Court would be required to impose at the least in this

3    case.

4          I also find that he knows of my obligation to

5    consider the sentencing law, the sentencing statute, the

6    basic purposes of sentencing that I talked to him about,

7    as well as to consider the Sentencing Guidelines.

8          I find that he knows of and has accepted the

9    terms of the plea agreement that waive his right to

10   challenge his conviction and his sentence provided it does

11   not exceed the particular ranges or the amounts, I should

12   say, that are specified in the plea agreement.

13          I further find that his plea today is voluntary.

14   It's not the result of any kind of force or threats or any

15   promises other than those that have been set forth in

16   writing between the parties.

17          And that there's a clear factual basis, as we've

18   just discussed, for the plea of guilty to both Counts

19   Three and Four of the indictment, the lesser included of

20   Count Four.

21          So a finding of guilt on those two charges shall

22   enter forthwith and the case will be referred to the

23   Probation Office for a presentence investigation.

24          I'm going to give you the schedule right now,

25   Mr. Claudio, of when I anticipate we'd get back together

1    for sentencing.

2              I'm going to set sentencing for the middle of

3    June, on June 13 of 2019 at 10:00 a.m. back here in this

4    court.

5              And then working backwards from there, May 2 for

6    the initial Presentence Report.  So that means you'll be

7    interviewed well before then by the Probation Office,

8    Mr. Claudio.

9              May 16, any objections to the Presentence

10   Report.  I just ask all counsel if you don't have any

11   objections at all to the Presentence Report, at least let

12   the probation officer know that so everybody is clear that

13   it's been reviewed.

14             On May 28, the final Presentence Report.

15             And Mr. Kestenband, if you could file your

16   sentencing memo on May 30, which is two weeks before the

17   sentencing, and then the government's sentencing memo on

18   June 6.  Of course, Mr. Kestenband, if you want to respond

19   to anything the government says in its memo, you're

20   welcome to file a reply.

21             So that's it.  Any questions about scheduling?

22             MR. KESTENBAND:  No, Your Honor.

23             MR. LEAMING:  No, Your Honor.

24             THE COURT:  So at the sentencing when I would

25   next see you, Mr. Claudio, what would happen is I'd hear

1    of course from the lawyers, but you would also have an

2    opportunity to speak if you wish to.  And I see a lot of

3    your family members are here.  They'd be welcome to speak

4    as well at the sentencing if you wish them to.  If you

5    have any letters that you want to submit, sometimes people

6    write letters to the probation officer, and make sure to

7    get those and give those to Mr. Kestenband in advance of

8    the sentencing.  Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Anything else to take up at this

11   point?

12           MR. KESTENBAND:  No, Your Honor.

13           MR. LEAMING:  No, Your Honor.

14           THE COURT:  Thank you.  We'll stand in recess.

15               (Proceedings adjourned at 11:19 a.m.)

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3        RE: UNITED STATES OF AMERICA v. MIGUEL CLAUDIO
                    No. 3:18CR90(JAM)

4

5            I, Diana Huntington, RDR, CRR, Official Court

6    Reporter for the United States District Court for the

7    District of Connecticut, do hereby certify that the

8    foregoing pages 1 through 48 are a true and accurate

9    transcription of my shorthand notes taken in the

10   aforementioned matter to the best of my skill and ability.

11

12

13

14

15                    _____/s/_____

16              DIANA HUNTINGTON, RDR, CRR
                   Official Court Reporter
17            United States District Court
                 141 Church Street, Room 147
18            New Haven, Connecticut 06510
                    (860) 463-3180

19

20

21

22

23

24

25